UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAWN KNIFFEN,

      Plaintiff,                     Civil Action No. 14-10106

           v.                        District Judge Lawrence P. Zatkoff
                                         Magistrate Judge R. Steven Whalen

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

     Plaintiff Dawn Kniffen ("Plaintiff"),  currently proceeding *pro se,* brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.   The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).   For the reasons discussed below, I recommend that Defendant's Motion for Summary Judgment be DENIED, and that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case be remanded for further administrative proceedings.

## PROCEDURAL HISTORY

     On May 18, 2011, Plaintiff applied for DIB and SSI, alleging disability  as of May

6, 2009  (Tr. 107-115, 125-130).  After the initial denial of her claim, Plaintiff requested an administrative hearing, held on June 21, 2012 in Livonia, Michigan (Tr. 29).  Administrative Law Judge ("ALJ") Mary Connolly presided.  Plaintiff, represented by attorney William M. Crawforth, testified (Tr. 31-40), as did Vocational Expert ("VE") Louann Castellano (Tr. 40-42).  On August 6, 2012, ALJ Connolly found that Plaintiff was not disabled (Tr. 24).  On November 15, 2013, the Appeals Council denied review (Tr. 1-6).  Plaintiff filed the present action on January 10, 2014.

## BACKGROUND FACTS

Plaintiff, born November 13, 1965, was 46 at the time of the administrative decision (Tr. 24, 109).  She completed a GED and worked previously as a accounts receivable and payable agent, clerk dispatcher, and service coordinator (Tr. 177).  She alleges disability as a result of bipolar disorder, attention deficit hyperactivity disorder ("ADHD"), and anxiety (Tr. 176).

### A.    Plaintiff's Testimony

Plaintiff offered the following testimony:

She last worked in an "accounts payable" department (Tr. 32).  Earlier, she worked as a service coordinator, which required her to direct technicians to various locations and, as a medical facility dispatcher (Tr. 32).  Concentrational problems prevented her from working (Tr. 33).  Her moods ranged from manic episodes where she did not sleep for up to two days at a time to depressive periods lasting from three to seven days where she would stay in bed

or otherwise isolate herself from family members (Tr. 33-34).   She had been treated by the same psychiatrist for several years but could not find a medication that successfully addressed her condition (Tr. 34-35).

Plaintiff lost her most recent job due to attendance problems and "too many mistakes" (Tr. 35).   She also lost an earlier job because of attendance and job performance issues (Tr. 36).  She experienced bipolar disorder since the age of 25, noting that the condition had been originally classified as major depression (Tr. 37).   She had been receiving mental health treatment "on and off" since the age of 25 (Tr. 37).   She had not been diagnosed with obsessive compulsive disorder ("OCD") but routinely moved furniture,  rechecked door locks, and rearranged rugs (Tr. 37). She currently took Lamictal, Ativan, Vistaril, Vyvanse, and Wellbutrin for psychological issues and also took medication for hypertension and hypothyroidism (Tr. 38).   She denied cocaine use in the past 10 years (Tr. 39-40).   She continued to drink after a DUI conviction in 2009 (Tr. 39-40).   She currently drank due to the family stressors of her father's illness and her husband's recent bankruptcy filing (Tr. 40).

### B.  Medical Evidence

#### 1.  Records Related to Plaintiff's Treatment[1]

October, 2008 records by Infinity Primary Care state that Plaintiff's depression was well controlled (Tr. 253).   Later the same month, Plaintiff was cautioned against using

---

[1]Treatment for conditions unrelated to the disability claim have been reviewed in full, but are omitted from the present discussion.

-3-

Ativan to self medicate for mental illness (Tr. 256).  Plaintiff was informed that she likely had bipolar disorder rather than depression (Tr. 256).  She exhibited a flat affect but was well groomed and well dressed (Tr. 257).  The following month, Plaintiff resolved to discontinue Ativan use (Tr. 258).  March, 2009 treating notes state that Plaintiff was "stable" on current psychotropic medication (Tr. 260).  She did not exhibit anxiety or depression (Tr. 261).  The same month, intake assessment notes by Oakland Family Services following Plaintiff's conviction for a DUI note that Plaintiff denied a history of OCD (Tr. 344).  She was assigned a GAF of 55[2] (Tr. 349).  In June, 2009, Angie Sweeney, M.D. stated that Plaintiff had "stable bipolar disorder on medication" (Tr. 267).  July, 2009 discharge notes by Oakland Family Services state that Plaintiff's psychotropic medication was working "well" in stabilizing her moods (Tr. 350).  She was assigned a GAF of 72[3] (Tr. 350).

In September, 2009, psychiatrist Lila E. Massoumi, M.D. noted that she had last seen Plaintiff in June, 2009 and one other time three months prior to the June meeting (Tr. 248).  Dr. Massoumi noted that after the June, 2009 meeting, Plaintiff had been referred to less expensive clinics but had been unable to obtain treatment (Tr. 248).  She rated Plaintiff's

---

[2]

A GAF score of 51–60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. *Diagnostic and Statistical Manual of Mental Disorders—Text Revision* ("*DSM–IV–TR*" ), 34(4th ed.2000).

[3]

A GAF rating of 71–80 indicates that "[i]f symptoms are present, they are transient and expectable reactions to psycho-social stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork)." *DSM–IV–TR* at 34.

current mood as a "nine" on a scale of one to ten (Tr. 249).

A June, 2010 report by psychiatrist Vijayalakshmi Lingam, M.D. states that Plaintiff experienced anxiety as a result of losing her employment check and her brother's medical problems (Tr. 278). She reported that she lost her most recent jobs because she was making mistakes (Tr. 278). She exhibited a normal memory (Tr. 279). Dr. Lingam assigned her a GAF of 45[4] (Tr. 280). December, 2010 psychiatric treating notes state that Plaintiff continued to abuse alcohol (Tr. 290). In April, 2011, she reported that her anxiety was under control but she lacked motivation to get out of bed, shower, or get dressed (Tr. 292).

In July, 2011, Plaintiff reported an increase in energy (Tr. 378). August, 2011 psychiatric records state that Plaintiff was getting married the following month, but was not happy (Tr. 371). October, 2011 psychiatric records state that Plaintiff was depressed after fighting with her new husband and stepdaughter (Tr. 364). Dr. Sweeney's records from the same month state that Plaintiff had experienced "a lot of adjustment in [psychotropic] medication" (Tr. 409). December, 2011 psychiatric records state that Plaintiff was "doing o.k." (Tr. 414).

January, 2012 psychiatric records note Plaintiff's report that she was "sleeping 14 hours a day" and neglecting to perform household chores (Tr. 421). March, 2012 psychiatric records state that Plaintiff was "tense" because she was going through bankruptcy but denied

---

[4]

A GAF score of 41–50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *DSM–IV–TR* at 34.

2:14-cv-10106-MAG-RSW   Doc # 17   Filed 01/12/15   Pg 6 of 18   Pg ID 637

feeling "unmotivated" or depressed (Tr. 506). May, 2012 psychiatric records note Plaintiff's report that she had "no motivation" (Tr. 499).

## 2. Non-Treating Records

In August, 2011, psychiatrist Saul Forman, M.D. conducted an examination on behalf of the SSA, noting Plaintiff's allegations of depression since the age of 25 and a more recent diagnosis of Attention Deficit Disorder ("ADD") (Tr. 352). Plaintiff denied current alcohol or illicit drug use (Tr. 353). She lived with her boyfriend at her mother's home, but denied friendships or relationships with coworkers (Tr. 353). Dr. Forman found that Plaintiff's understanding and memory were impaired (Tr. 355). He found her social skills "poor," noting her inability to sustain a long-term relationship or adapt (Tr. 355). He assigned her a GAF of "41-50" (Tr. 356).

Later the same month, Ashok Kaul, M.D. performed a non-examining Psychiatric Review Technique on behalf of the SSA, finding that as a result of organic, affective, and personality disorders, Plaintiff experienced mild limitation in activities of daily living and moderate limitation in social functioning and concentration, persistence, or pace (Tr. 49-50). Dr. Kaul found that despite some level of psychological restriction, Plaintiff could "perform simple, routine, [one to two-step] unskilled tasks on a regular and fairly sustained basis" (Tr. 53).

## 3. Records Submitted After the ALJ's August 6, 2012 Decision (Tr. 352-361)[5]

---

[5]

Where the Appeals Council denies a claimant's request for a review of an application

-6-

June, 2012 psychiatric records state that Plaintiff reported family health problems and that her husband had recently been denied bankruptcy (Tr. 521). August 22, 2012 psychiatric records state that Plaintiff reported paranoia and hallucinations (Tr. 527). Psychiatric records from the following week state that the psychotic episode, possibly due to medication, had resolved (Tr. 533).

### C. Vocational Expert Testimony

VE Louann Castellano classified Plaintiff's former work in accounts payable as skilled at the sedentary level of exertional (exertionally light as performed); purchasing clerk, semiskilled/sedentary; service dispatcher, semiskilled/sedentary (light as performed); service coordinator, skilled/sedentary; and internal operations manager, skilled/light (sedentary as performed)[6] (Tr. 41).

---

based on new material (Tr. 1–6), the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Cotton v. Sullivan,* 2 F.3d 692, 696–696 (6th Cir.1993). Sentence six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." As such, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of § 405(g).

Plaintiff does not premise her arguments for remand on the evidence submitted after the administrative decision. My own review of same evidence indicates that it does not provide a basis for remand.

[6]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and

The ALJ then described a hypothetical individual of Plaintiff's age, education, and work experience:

> Exertionally would have no limitations but non-exertionally, for purposes of this hypothetical would have mild limitations in concentration, pace and persistence, such as she could be off task about five percent of the time. . . . Could she do the past relevant work? (Tr. 41).

In response, the VE testified that the above limitations would preclude the skilled occupations but did not prevent the individual from performing semiskilled jobs of service dispatching and purchasing clerk (Tr. 41). He found that the individual could perform the semiskilled job of cashier clerk (7,000 positions in the regional economy); retail sales clerk (12,000); and telephone solicitor (2,300) (Tr. 41-42). The VE testified that if the above-described individual were off task up to 50 percent of the workday due to moderate concentrational difficulties, or, experienced unscheduled attendance problems three times each month, all work would be precluded (Tr. 42).

### D. The ALJ's Decision

Citing the medical records, the ALJ found that Plaintiff experienced the severe impairments of "affective disorder and alcoholism" but that neither of the conditions met or equaled any impairment listed in 20 C.R.F. Part 404, Subpart P, Appendix 1 (Tr. 18). The ALJ found that Plaintiff experienced mild limitation in activities of daily living, moderate

---

that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

limitation in social functioning, and mild limitation in concentration, persistence, or pace (Tr. 19). The ALJ found that Plaintiff retained the following residual functional capacity ("RFC"):

> [A] full range of work at all exertional levels but with the following nonexertional limitations: mild concentration, persistence, and pace (Tr. 19-20).

Citing the VE's testimony, the ALJ found that while Plaintiff was unable to perform her past relevant work, she could work as a cashier, retail sales clerk, and telephone solicitor (Tr. 23-24).

The ALJ discounted Plaintiff's allegations of disability, noting that substance abuse treatment records showed that Plaintiff's moods were well controlled with medication (Tr. 20). The ALJ observed that although Plaintiff alleged disability as of May, 2009, she did not commence "specialized mental health care" before September, 2009 (Tr. 20). The ALJ cited medical records created between March and June, 2009 showing that Plaintiff's condition was stable (Tr. 21).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6ᵗʰ Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

*Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has

the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## <u>ANALYSIS</u>

### A. Plaintiff's Arguments For Remand

Plaintiff, proceeding *pro se*, takes issue with a number of the ALJ's findings. *Docket #15,* pgs. 1-5 of 16. She disputes the finding that she experienced only mild limitation in activities of daily living, moderate limitation in social functioning, and mild limitation in concentrational abilities and no episodes of decompensation. *Id.* at 2-3 (citing Tr. 18-19). She argues that she actually experienced "marked" limitations in all three categories and has experienced multiple episodes of decompensation. *Id.* She points out that a finding of two or more marked limitations or, a combination of one marked limitation and repeated episodes of decompensation would automatically result in a disability determination. *Id.*; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04.

A "marked" mental limitation, on a five-point scale of "none," "mild," "moderate," "marked" and "extreme" is defined as one which "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the] ability to function independently, appropriately, effectively, and on a sustained basis." § 12.00. The first category, "activities of daily living,"

pertains to "adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for . . . grooming and hygiene, using telephones and directories, and using a post office. *Id.* The second category, "social functioning," refers to the "capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals." *Id.* The third area, "concentration, persistence, or pace" "refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.*

"Episodes of decompensation" are defined as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." *Id.* Decompensation may be shown by "an exacerbation in symptoms or signs that would ordinarily require increased treatment" and/or "a less stressful situation." *Id.* Such episodes "may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system" such as "hospitalizations, placement in a halfway house, or a highly structured and directing household or other relevant information in the record about the existence, severity, and duration of the episode." *Id.* "Repeated episodes of decompensation, each of extended duration," refers to "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." In some circumstances,

-12-

repeated episodes of decompensation may also be shown by "more frequent episodes of shorter duration or less frequent episodes of longer duration." *Id.*

Substantial evidence supports the ALJ's finding that Plaintiff did not experience either two marked limitations or one marked limitation combined with repeated episodes of decompensation. The ALJ noted that Plaintiff's claim that she bathed and dressed only sporadically was contradicted by her husband's statement that she did not experience problems in personal care or cooking (Tr. 19). My own review of the psychiatric and medical evidence shows that Plaintiff appeared consistently well groomed with a generally appropriate affect. Likewise, as to social functioning, the ALJ observed that while Plaintiff experienced interpersonal problems at work, she was able to live with her husband "without" difficulty (Tr. 19). I note that during the period under review, Plaintiff was able to sustain a romantic relationship, get married, and interact successfully with her stepchildren. The ALJ supported her finding of mild limitation in concentration, persistence, and pace with the treating records, indicating that Plaintiff experienced a normal attention span, focus, and memory (Tr. 19). Further, none of the records before the ALJ suggest that Plaintiff underwent hospitalization or needed other accommodations required to show even one episode of decompensation. *See* § 12.00 *et seq.* The records do not suggest that she required hospitalization for her condition, much less establish that she experienced repeated episodes of decompensation lasting for two weeks.

In a related argument, Plaintiff objects to the ALJ's finding of moderate social

functioning illustrated by a job termination "due to interpersonal issues." *Docket #15* at 2 (*citing* Tr. 19). She states instead that she lost the job due to "mistakes." *Id.* Her objection is construed as an argument in favor of a finding of marked limitation in concentration, persistence, or pace. Yet, even assuming that Plaintiff experienced "marked" concentrational deficiencies, substantial evidence generously supports the finding that she did not experience marked limitations in the other two categories or, repeated episodes of decompensation.

Plaintiff makes a number of other scattershot criticisms of the ALJ's findings. She argues that the ALJ's finding that an "affective disorder" was a "severe" impairment stands at odds with the non-disability finding. However, in Social Security parlance, a "severe" condition refers to any condition that would have more than a minimal effect on the claimant's work abilities. *Farris v. Secretary of HHS,* 773 F.2d 85, 89-90 (6th Cir.1985) (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir.1984)). Finding that an impairment is "severe" is merely a *de minimis* hurdle intended to do no more than screen out groundless claims. See *Edlund v. Massanari,* 253 F.3d 1152, 1158 (9th Cir.2001).

In another argument, Plaintiff disputes the finding that she ever received a GAF of 72. Contrary to this claim, July, 2009 discharge notes by Oakland Family Services show that Plaintiff's GAF was 72, accompanied by notes stating that her mental condition was stable (Tr. 20, 350). While Plaintiff objects to the ALJ's reliance on the treating medical sources to show mental stability (Tr. 21), the record shows that Plaintiff's psychological progress

-14-

during the disputed period was frequently evaluated by the physical  health specialists (Tr. 260-261, 267, 350).  Notably, in Dr. Sweeney, a physical treating source, composed a letter on Plaintiff's behalf stating that she was "stable" on her current bipolar medication (Tr. 267).

### B.  Grounds for Remand

Nonetheless, grounds for remand exist.   The ALJ found that Plaintiff experienced "moderate" deficiencies in social functioning (Tr. 19).   However, neither the hypothetical question nor RFC contain reference to such limitations.  The  hypothetical limitations posed to the VE were limited to "mild limitations in concentration, pace and persistence" (Tr. 41). Likewise, the RFC consisted only of mild concentrational limitations (Tr. 20).   While the "mild" concentrational limitation found in the hypothetical question/RFC is consistent with the ALJ's determination finding mild deficiencies in concentration, persistence, or pace, the hypothetical question made no mention of the moderate social limitations (Tr. 19).

 A hypothetical question constitutes substantial evidence only if it accurately portrays the individual's relevant impairments. *Varley v. Commissioner of Health and Human Services*, 820 F.2d 777, 779 (6th Cir.1987). While the Sixth Circuit has rejected the proposition that all of the claimant's maladies must be listed verbatim, "[t]he hypothetical question ... should include an accurate portrayal of [a claimant's] individual physical and mental impairments." *Webb v. Commissioner of Social Sec.*, 368 F.3d 629, 632 (6th Cir.2004).  As such, while the hypothetical question did not require the inclusion of the phrase, "moderate limitation in social functioning," it ought to have acknowledged  some

-15-

degree of impairment consistent with the findings in the administrative decision. A "moderate" limitation (representing the mid-point on a five-point scale of none, mild, moderate, marked, and extreme) implies the presence of at least some degree of limitation requiring mention in the question to the VE. 20 C.F.R. § 404.1520a(c)(4).  *See Fellows v. Astrue* 2011 WL 4005239, *3 (M.D.Ala. September 8, 2011)(*citing Wilson v. Barnhart,* 284 F.3d 1219, 1227 (11th Cir.2002)(ALJ's failure to reference moderate  social functioning limitations in hypothetical question invalidated VE's responding job testimony).  Here, the omission of reference to the social functioning impairment is of particular concern, given that the three jobs cited by the VE (cashier, retail clerk, and telephone solicitor) would by definition require almost constant interaction with the general public.  At best, it is uncertain whether an individual with moderate limitations in social functioning would be capable of work requiring frequent to constant public interaction.

Other portions of the ALJ's findings warrant a second look.  In support of the non-disability finding, she commented that although Plaintiff alleged disability as of May, 2009 she did not "attend any specialized mental health care until September, 2009" aside from court-ordered substance abuse counseling (Tr. 20).   In fact, September, 2009 treating notes state that Dr. Massoumi referred Plaintiff to less expensive clinics in June, 2009 but that Plaintiff was unsuccessful in her attempts to procure treatment (Tr. 248).  Aside from this questionable finding, the ALJ's determination that Plaintiff's concentration limitations were "mild" is not strongly supported.  The "mild" finding contradicts both Dr. Forman's finding

-16-

that Plaintiff exhibited significant concentrational problems and Dr. Kaul's finding of "moderate" deficiency in the same area (Tr. 49-50, 355).  As a result, the ALJ's conclusion that Plaintiff was capable of semiskilled jobs stands sharply at odds with Dr. Kaul's finding that Plaintiff was limited to "simple, routine," [one to two-step] unskilled tasks" (Tr. 53).

Consistent with my findings, a remand is required. The final question is whether to remand for further fact-finding or an award of benefits. While Defendant has failed to meet its burden at Step Five of the administrative sequence, Plaintiff has not presented an "overwhelming" case for disability.  The errors discussed herein, while critical, do not automatically entitle the Plaintiff to an award of benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171 (6th Cir.1994).  Accordingly, the case should be remanded to the administrative level for further proceedings consistent with this Report and Recommendation.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be DENIED, and that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case be remanded for further administrative proceedings.

Any objections to this Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v.*

-17-

*Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: January 12, 2015

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on January 12, 2015, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager